IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                   Cr. No.  19-20196-TLP

ANTHONY CARPENTER,

   Defendant.

**DEFENDANT ANTHONY CARPENTER'S MOTION TO SUPPRESS AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Defendant, Anthony Carpenter, pursuant to Federal Rule of Criminal Procedure 12(b)(3), and for his Motion to Suppress, would respectfully state unto this Honorable Court as follows:

### I. INTRODUCTION

According to discovery that has provided in this case,[1] on March 24, 2019, officers with the Memphis Police Department (hereinafter "MPD") responded to 4409 Alice Drive in Memphis, Tennessee, to serve an arrest warrant for aggravated assault on Mr. Carpenter.  Officers had received information that Mr. Carpenter was outside of the residence, where he lived, sitting inside a gold Ford Mustang that was parked in the carport attached to the residence.  Upon their arrival at the residence,  Officers observed Mr. Carpenter sitting in the vehicle as reported, removed him

---

[1] The facts set forth in this Motion were obtained largely from the government's discovery production to date.  The facts are set forth solely for purposes of this Motion.  Defendant does not herein adopt them as true for any other purpose and reserves the right to supplement this Motion pursuant to further discovery or new facts elicited at the evidentiary hearing on this Motion.

[1]

from the vehicle, and verified that he was the correct person named in the warrant.  Mr. Carpenter was immediately handcuffed behind his back and led away from the vehicle to be placed in the backseat of a patrol car.  After Mr. Carpenter was placed under arrest and while he was being escorted by other officers, Officer Lamual Jackson began to search the gold Mustang.  During the search, Officer Jackson found a black Sig Sauer 9mm semiautomatic firearm in the floorboard of the vehicle on the passenger side.  Mr. Carpenter was subsequently charged with unlawfully possessing the found firearm.

As explained more fully below, there was no constitutional basis for the search of vehicle in this case, and the search violated the Mr. Carpenter's Fourth Amendment rights.  Therefore, all of the evidence obtained as a result of the search should be suppressed.

## II.   ARGUMENTS AND AUTHORITIES

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth Amendment thus prohibits "'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 9 (1968)).  The Sixth Circuit has recognized "three types of permissible encounters between the police and citizens" under the Fourth Amendment: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause."  United States v. Smith, 594 F.3d 530, 535 (6th Cir. 2010) (internal quotations and citations omitted).

When evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. United States v. Pearce, 531 F.3d 374, 381 (6th Cir. 2008) (citing Mapp v. Ohio, 367 U.S. 643, 654 (1961)). This is the exclusionary rule and it "is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." Id. (citations omitted).

As explained further below, Mr. Carpenter avers that the search of the vehicle in this case amounted to a violation of his rights under the Fourth Amendment. Consequently, there are no applicable exceptions to the otherwise required search warrant requirement; therefore, Mr. Carpenter respectfully requests that this Court suppress all of the evidence found as a result of the unconstitutional search.

**A.     The degree of intrusion was excessive.**

It is well settled that the Terry doctrine applies to investigative stops when the police have "a reasonable and articulable suspicion that a person has been involved in criminal activity." United States v. Bentley, 29 F.3d 1073, 1075 (6th Cir. 1994). Thus, assuming that the officers in this matter had a valid warrant, they could lawfully stop Mr. Carpenter and briefly detain him for investigatory purposes. In Terry, however, the Supreme Court focused its discussion on brief investigatory stops made by police officers on the basis of reasonable suspicion not amounting to probable cause for arrest. Here, the officers removed Mr. Carpenter from the vehicle and immediately placed him under arrest.

After detaining a person for a Terry stop, the officer may conduct a "reasonable search for weapons . . . where he has reason to believe that he is dealing with an armed and dangerous individual." Terry, 392 U.S. at 27. That is, during a Terry stop, officers are permitted to search an automobile's passenger compartment for weapons if the officers have a reasonable belief, based

on "specific and articulable facts," that the suspect is dangerous and may "gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049-50 (1983) (quoting Terry, 392 U.S. at 21). This rule recognizes that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." Id. at 1047. This only applies, however, where the suspect is not secured and might imminently reenter the car, Id. at 1051, not where the suspect is handcuffed and under arrest. Arizona v. Gant, 556 U.S. 332, 351 (2009).

In the instant case, Mr. Carpenter was immediately removed from the vehicle and the officers verified that he was the individual that they were there to arrest. Mr. Carpenter was then handcuffed behind his back and led away from the vehicle in order to be placed in the back of a patrol car. He no longer had access to the vehicle or its contents, and he was definitely not a threat to officers because he was detained by several officers and there was absolutely no possibility that he would reenter the vehicle. Thus, the scope of the Terry stop was excessive because the investigative detention was at an end once it was verified that the police had the correct person subject to the warrant.

**B.     The search of the vehicle was unconstitutional.**

It is anticipated that the Government may argue that the search of the vehicle was a permissible search incident to arrest. This is because Supreme Court precedent establishes that an officer may conduct a warrantless search of an arrestee's vehicle when genuine safety or evidentiary concerns exist. Gant, 556 U.S. at 347. Officers must actually arrest the person in order to justify such searches, not simply have the right to arrest. Knowles v. Iowa, 525 U.S. 113, 117-18 (1998).

In order to lawfully arrest a person or to conduct a subsequent search of the person's vehicle or packages, however, an officer must have "probable cause to believe that a criminal offense has

[4]

been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." Henry v. United States, 361 U.S. 98, 102 (1959); accord Beck v. Ohio, 379 U.S. 89, 91 (1964). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck, 543 U.S. at 152.

As detailed previously, Mr. Carpenter was immediately removed from the vehicle and handcuffed. Police safety was thus no longer a valid reason to search the vehicle. Gant still permits such searches, however, where "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Gant 556 U.S. at 344 (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)). Although Mr. Carpenter was not initially advised that he was under arrest, he was told that he had an outstanding arrest warrant for aggravated assault. However, when asked by Mr. Carpenter on various occasions about the nature of the warrant, the officers were unable to give Mr. Carpenter any details regarding the offense and readily admitted that they only knew that there was an outstanding warrant for his arrest. In addition, no criminal activity was witnessed by the officers immediately prior to the vehicle search. Thus, Officer Jackson had no probable cause to believe that evidence of a crime would be found within the vehicle. Consequently, a warrant was required to search the vehicle. Without the required warrant, Officer Jackson's search of the vehicle was unconstitutional and any evidence obtained from the search of the vehicle should be suppressed as a result.

**C.     The search of vehicle occurred in the curtilage of the home.**

While it is without question that a search of an individual's home that is conducted in violation of the Fourth Amendment is unconstitutional, the Sixth Circuit has likewise explained that "'the area immediately surrounding and associated with the home – is treated as part of [the] home itself for Fourth Amendment purposes.'"  United States v. Coleman, 923 F.3d 450, 455 (6th Cir. 2019) (quoting, Morgan v. Fairfield Cty., Ohio, 903 F.3d 553, 561 (6th Cir. 2018)).  "'The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened.'"  Id. (quoting, Collins v. Virginia, 138 S.Ct. 1663, 1670, (2018)).  To determine whether a driveway is within the curtilage of a home, the Sixth Circuit relies upon the factors from United States v. Dunn, 480 U.S. 294, 301 (1987).  The four non-exhaustive factors for ascertaining whether an area constitutes the curtilage of a home include: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by.  Id. The determination as to whether there exists an expectation of privacy in the area entered and searched is done on a case by case basis and is fact-intensive.  Coleman, 923 F.3d at 455.  As the vehicle searched in this case was located under the carport of the residence, Mr. Carpenter submits that he was entitled to the same Fourth Amendment protections afforded to his residence located at 4409 Alice Drive.

The carport in question is directly connected to the right side of the residence and is enclosed on two sides by the residence.  The carport is used to shelter the family's vehicles and appears to serve as an entry for two utility closets/storage rooms that are accessed via the carport.

In addition, there is a side entrance to the residence that may be accessed via the carport.  "A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch." Collins, 138 S. Ct. at 1671.  It is without question that when Officer Jackson searched the vehicle, it was parked in the curtilage of Mr. Carpenter's residence.  Thus, and in addition to the reasons detailed in the previous sections, a warrant was required to enter carport and conduct the search of the vehicle.  As a result of the warrantless search, the firearm found in the vehicle should be suppressed because it was obtained in violation of the Fourth Amendment.

### III.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, any and all evidence obtained against the Defendant, Anthony Carpenter, pursuant to the vehicle search on March 24, 2019, should be suppressed as a matter of law.  If the Court declines to suppress the evidence as a matter of law, Mr. Carpenter requests an evidentiary hearing with findings of fact and conclusions of law pursuant to United States v. Moore, 936 F.2d 287, 289 (6th Cir. 1991) (stating that essential findings on the record are necessary to facilitate appellate review).

Respectfully Submitted,

DORIS RANDLE-HOLT
FEDERAL DEFENDER

s/ ROBERT L. THOMAS
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

[7]

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to Ms. Wendy Cornejo, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, on this 15th day of November, 2019.

                  s/ ROBERT L. THOMAS
                  Assistant Federal Defender